IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Ultimate Trading International, LLC,<br><br>      Plaintiff,<br><br>v.<br><br>Jose Hess Design, LLC,<br><br>      Defendant. | **COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Ultimate Trading International, LLC ("Plaintiff" or "Ultimate"), for its complaint against defendant Jose Hess Design, LLC ("Defendant" or "JHD"), pleads as follows:

## THE PARTIES

1. Ultimate is a limited liability company organized under the laws of new Jersey and maintains its principal place of business at 385 Franklin Avenue, Suite F, Rockaway, New Jersey 07866.

2. Upon information and belief, JHD is a limited liability company organized under the laws of Florida and maintains its principal place of business at 135 Jenkins Street, Suite 105B-313, St. Augustine, Florida 32086.

## NATURE OF THE ACTION

3. This is a declaratory judgment action arising under the copyright laws of the United States, 17 U.S.C. §§ 1 *et seq*. This action seeks a declaration that Ultimate does not infringe any valid copyright held by JHD.

4. JHD has created an actual, substantial, and immediate controversy by threatening litigation over alleged copyright infringement and by demanding that

1

Ultimate cease and desist from its lawful behavior. JHD's multiple and increasingly severe threats have created an actual, substantial, and immediate controversy over the rights and other legal relationship between the parties, and a judicial declaration confirming that Ultimate's conduct is lawful is necessary and appropriate.

## JURISDICTION AND VENUE

5. This action arises under (i) the copyright laws of the United States, 17 U.S.C. §§ 101 *et seq.*, and (ii) the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. Thus, this Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a), and 2201 because this case arises under the laws of the United States, including 17 U.S.C. §§ 101 *et seq*.

6. This Court has personal jurisdiction in this action over JHD because, on information and belief: JHD was organized under the laws of the State of New Jersey on or about February 4, 2005 and operated in New Jersey until at least June 2018; JHD has had, and continues to have, substantial business operations in New Jersey; and the allegedly copyright-protected designs were created at least in part in New Jersey.

7. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and 1391(c) because a substantial portion of the events giving rise to the claims at issue, and a substantial portion of goods that are the subject of this action, are located within the District of New Jersey.

## FACTUAL ALLEGATIONS

### History of Ultimate and JHD

8. Ultimate Trading Corporation ("UTC") was a New Jersey corporation formed in 1990. UTC was owned and operated by Mr. Todd Knichel ("Mr. Knichel").

9. On or about October 1, 2015, Ultimate acquired the assets and intellectual property of UTC and assumed the business operations of UTC. Mr. Knichel is an owner of Ultimate and serves as its President.

10. Ultimate designs, manufactures, imports, distributes, markets, and sells, throughout the United States, jewelry and imitation jewelry products.

11. Ultimate operates a manufacturing and warehouse facility in Rockaway, New Jersey.

12. Ultimate (and UTC before it) has worked extensively with QVC Network ("QVC") and Home Shopping Network ("HSN"). In or around 2017, QVC merged with HSN. Ultimate has continued to work extensively with QVC to promote and sell jewelry to consumers.

13. Mr. Jose Hess ("Mr. Hess") was a jewelry designer and promoter and had been featured on QVC television programming in the late 1990s.

14. Mr. Knichel first met Mr. Hess in or around June 2010 at the JCK trade show in Las Vegas, Nevada.

15. Upon information and belief, Mr. Hess and his wife, Ms. Magdalena Hess ("Ms. Hess"), were residents of Alpine, New Jersey in 2010 through at least 2018.

16. On or about April 18, 2011, Mr. and Ms. Hess met with Mr. Knichel at UTC's offices in Roseland, New Jersey. At the meeting, Mr. and Ms. Hess expressed an interest in promoting and selling brands through QVC and sought Mr. Knichel's assistance in doing so.

17. Mr. Hess, Ms. Hess, and Mr. Knichel entered into a verbal agreement at that time with the understanding that Mr. Knichel would make efforts to get jewelry designed by Mr. and Ms. Hess back onto QVC, and that Mr. Hess would receive an industry standard commission on sales if he was successful.

18. Thereafter, Mr. Knichel attempted for years to promote Mr. and Ms. Hess to QVC and other retailers without success, until 2020.

19. In 2020, a senior buyer from HSN stated to Mr. Knichel that QVC was interested in carrying a religious spiritual based brand. In accordance with his verbal agreement, Mr. Knichel suggested and successfully advocated for Ms. Hess to fill the role for a religious spiritual based brand for QVC.

20. Mr. Knichel then developed a new brand called Bles†®. In connection with Bles†, Mr. Knichel developed the jewelry, trademarked the brand, manufactured jewelry, imported jewelry, warehoused jewelry and facilitated television promotions featuring Ms. Hess on HSN. A screenshot from one such television program is shown below:



HSN | Silver Jewelry Celebration - BlesT Premiere 03.23.2021 - 02 PM
https://www.youtube.com/watch?v=NemhJxDhd4k

21. Around that time, Ms. Hess provided some jewelry designs to Ultimate to explore potential business opportunities. One such design was referred to as the Summer Earrings. Ultimate had samples created from the designs provided by Ms. Hess and used those samples to pitch the items to retailers on Ms. Hess' behalf.

22. Mr. Knichel also continued to pitch the Jose Hess Collection to retailers without further success.

23. Beginning around April 2023, Ms. Hess requested that Ultimate return the design materials she had provided to Ultimate. Ultimate complied with the request and returned Ms. Hess' materials on or about August 11, 2023.

24. Ultimate retained any samples it had created based off the design materials received from Ms. Hess. The samples were marked as proprietary, with

one exception. The samples Ultimate had created based on the Summer Earrings were inadvertently marked as "available open line" and mistakenly placed into generic circulation for future consideration. All remaining designs received from Ms. Hess were marked proprietary.

## The Accused Products

25. For at least twenty years, Ultimate has worked with Ms. Kathy Levine ("Ms. Levine") to develop, manufacture, import, and promote jewelry items.

26. Ultimate has worked with Ms. Levine on over two hundred styles of jewelry products, which have been promoted and sold through QVC and other retailers.

27. Upon information and belief, Ms. Levine is a resident of West Chester, Pennsylvania.

28. Upon information and belief, QVC maintains its headquarters in West Chester, Pennsylvania.

29. Ms. Levine provided independent inspiration for a jewelry necklace. Based on Ms. Levine's inspiration, Ultimate produced, marketed, and sold a jewelry necklace under the brand Diamonique x Kathy Levine Sparkler Drop Necklace ("the Sparkler Drop Necklace").

30. Ms. Levine provided independent inspiration for a pair of reversible hoop earrings. Based on Ms. Levine's inspiration, Ultimate produced, marketed, and sold earrings under the brand Diamonique x Kathy Levine Europa Reversible Hoop Earrings ("the Reversible Hoop Earrings").

31. Ms. Levine provided independent inspiration for a bracelet. Based on Ms. Levine's inspiration, Ultimate produced, marketed, and sold a bracelet under the brand Diamonique x Kathy Levine Round Cut Bliss Bracelet ("the Bliss Bracelet").

32. Ms. Levine provided independent inspiration for a pair of earrings. Based on Ms. Levine's inspiration, Ultimate produced, marketed, and sold earrings under the brand Diamonique x Kathy Levine Ferris wheel Earrings ("the Ferris Wheel Earrings").

33. Ms. Levine provided independent inspiration for a ring. Based on Ms. Levine's inspiration, Ultimate produced, marketed, and sold a ring under the brand Diamonique x Kathy Levine Ferris Wheel Ring ("the Ferris Wheel Ring").

34. Upon information and belief, because the samples Ultimate had created based on the Summer Earrings mistakenly placed into generic circulation for future consideration, they were used as an inspiration for a new pair of earrings sold under the brand Diamonique x Kathy Levine 1.20 cttw Hoop Earrings ("the Hoop Earrings"). However, there are substantive design differences between the Summer Earrings and the Hoop Earrings.

35. For purposes of this complaint, the Sparkler Drop Necklace, the Reversible Hoop Earrings, the Bliss Bracelet, the Ferris Wheel Earrings, the Ferris Wheel Ring, and the Hoop Earrings, are collectively referred to as the "Accused Products."

7

**JHD's Allegations of Infringement and Threats to File Suit**

36. Upon information and belief, JHD is owned directly or indirectly by Ms. Hess.

37. On or about February 29, 2024, Ms. Hess contacted Mr. Knichel and alleged that Ultimate had misappropriated her designs in certain accused jewelry items sold by Ultimate. In response, Mr. Knichel explained that Ms. Levine had provided the inspirations for the designs of the Accused Products. Mr. Knichel put Ms. Hess in touch with Ms. Beth Osborn, who works for Ultimate as its Vice President, TV and Electronic Sales.

38. Ms. Osborn researched Ms. Hess' allegations. Ms. Osborn and Ms. Hess then discussed the designs of the accused jewelry items, during which Ms. Osborn provided Ms. Hess with a complete explanation of the independent origins for the accused jewelry items. Ms. Hess accepted Ms. Osborn's explanation of how the designs differed from Mr. Hess' designs and how they were independently created. Ms. Osborn reported the nature of the conversation to Mr. Knichel. Based on that conversation, Mr. Knichel believed the dispute had been resolved. Mr. Knichel heard nothing further from Ms. Hess for over one year.

39. On or about September 15, 2025, counsel for JHD sent a letter to Mr. Knichel and Mr. Prateek Nigam, Co-Chief Executive Officer of Oriental GemCo ("OGC"), alleging that OGC and UTC engaged in "willful copyright infringement in violation of federal law." A copy of this letter is included as Exhibit A to this Complaint.

40. In the letter dated September 15, 2025, counsel for JHD asserted that JHD is the exclusive owner of valid copyrights in designs it refers to as the Garden Lights Necklace, the Summer Earrings, the Bolita Earrings, the Fantasy Bracelet, and the R0253 Design (collectively, "the Asserted Designs"), citing Copyright Registration Nos. VAu 481-433, VAu 481-434, VAu 529-938, and VAu 203-558.

41. The letter dated September 15, 2025 states: "in order to avert *immediate litigation*, we need you to provide us with the following [documents]…." (Emphasis added). The letter further states: "should our client be forced to litigate this matter, *JHD will not hesitate to file suit* to assert its rights against QVC, Kathy Levine, Gemistry and any other third parties who have engaged in direct or secondary infringement of our client's copyrights or any other violation of JHD's rights." (Emphasis added).

42. Promptly after receipt of the letter, Ultimate implemented a management freeze with respect to all Accused Products and demanded from all retail platforms for the Accused Products to be removed and no longer offered for sale. As a result of the management freeze, all existing inventory of the Accused Products is being securely held and not offered for sale.

43. On September 29, 2025, Ultimate provided information and an explanation of events to counsel for JHD in a good faith effort to reach a resolution with JHD over JHD's allegations.

44. On or about October 15, 2025, counsel for JHD sent a letter to counsel for Ultimate, expressing disapproval with Ultimate's explanation and stating: "we

9

are making one *final* attempt to see if we might resolve this matter without *the need to initiate litigation*." (Emphasis added).  The letter demanded more information. A copy of this letter is included as Exhibit B to this Complaint.

45. On October 24, 2025, as demanded, Ultimate provided further information to counsel for JHD in a continued good faith effort to reach a resolution with JHD over JHD's allegations.

46. On October 31, 2025, counsel for Ultimate held a telephone call with counsel for JHD, during which counsel for JHD demanded even more documents and information from Ultimate. Counsel for JHD stated "my client wants to file [suit] yesterday."

47. On or about November 8, 2025, at Ultimate's request, Ms. Hess executed a Confidentiality Agreement to govern Ultimate's production of confidential business records to substantiate its explanation of events.  Thereafter, Ultimate produced confidential business records to counsel for JHD in a continued good faith effort to reach a resolution with JHD over JHD's allegations.

48. On January 13, 2026, counsel for Ultimate held a telephone call with counsel for JHD, during which counsel for JHD demanded additional documents and information from Ultimate.

49. Thereafter, Ultimate produced additional confidential business records to counsel for JHD in a continued good faith effort to reach a resolution with JHD over JHD's allegations.

50. On or about February 13, 2026, counsel for JHD sent a letter to counsel for Ultimate, accusing Ultimate of willful infringement of JHD's alleged designs. The letter contains a settlement demand that is unsupportable under copyright law.

51. Since September 15, 2025, JHD has repeatedly threatened to file a lawsuit imminently against Ultimate, and JHD's demand demonstrates a lack of good faith in negotiations. The settlement demand in JHD's letter of February 13, 2026 confirms that this dispute is not resolvable by the parties and requires a judicial determination.

### JHD's Allegations Are Without Merit

52. In the letter dated September 15, 2025, counsel for JHD alleged that the Sparkler Drop Necklace infringes JHD's copyrighted design in the Garden Lights Necklace. There are substantial differences between the Sparkler Drop Necklace and the Garden Lights Necklace, and the Sparkler Drop Necklace was the result of independent creation and design.

53. In the letter dated September 15, 2025, counsel for JHD alleged that the Hoop Earrings infringe JHD's copyrighted design in the Summer Earrings. There are substantial differences between the Hoop Earrings and the Summer Earrings.

54. In the letter dated September 15, 2025, counsel for JHD alleged that the Reversible Hoop Earrings infringe JHD's copyrighted design in the Bolita Earrings. There are substantial differences between Reversible Hoop Earrings and the Bolita Earrings, and the Reversible Hoop Earrings were the result of independent creation and design.

55. In the letter dated September 15, 2025, counsel for JHD alleged that the Bliss Bracelet infringes JHD's copyrighted design in the Fantasy Bracelet. There are substantial differences between the Bliss Bracelet and the Fantasy Bracelet, and the Bliss Bracelet was the result of independent creation and design.

56. In the letter dated September 15, 2025, counsel for JHD alleged that the Ferris Wheel Earrings infringes JHD's copyrighted design entitled R0253. There are substantial differences between the Ferris Wheel Earrings and the R0253 design, and the Ferris Wheel Earrings were the result of independent creation and design.

57. In the letter dated September 15, 2025, counsel for JHD alleged that the Ferris Wheel Ring infringes JHD's copyrighted design entitled R0253. There are substantial differences between the Ferris Wheel Ring and the R0253 design, and the Ferris Wheel Ring was the result of independent creation and design.

**JHD Does Not Have Valid Copyrights for Any of the Asserted Designs**

58. According to JHD, it is the owner of Copyright Registration Nos. VAu 481-434, VAu 529-938, and VAu 203-558. Exhibit A at 14-15.

59. The United States Copyright Office lists the owner of Copyright Registration Nos. VAu 481-434, VAu 529-938, and VAu 203-558 as Jose Hess, Inc. Exhibit D.

60. Upon information and belief, Jose Hess, Inc. was a New York corporation formed on August 3, 1970. According to the New York Department of State website, Jose Hess, Inc. has been inactive since January 25, 2012.

61. Upon information and belief, in 2006, Jose Hess, Inc. sold the entirety of Jose Hess' brand names, designs, and worldwide distribution rights to Birks & Mayors Inc. Upon information and belief, the sale included the Asserted Designs. Thus, JHD does not have rights in the Asserted Designs.

### The Existence of an Actual and Justiciable Controversy

62. After receipt of the letter from JHD's counsel dated September 15, 2025, Ultimate implemented a management freeze with respect to all Accused Products and demanded from all retail platforms for the Accused Products to be removed and no longer offered for sale.

63. Since that time, Ultimate has held any remaining inventory of the Accused Products pending resolution of the dispute with JHD.

64. JHD has repeatedly threatened Ultimate with legal action if Ultimate continues to sell the Accused Products and/or refuses to pay compensation to JHD for alleged infringement of JHD's alleged copyrights.

65. Ultimate has a substantial investment in its products and its reputation, including with Kathy Levine and QVC. JHD's demands and threats of litigation against Ultimate, QVC, and Kathy Levine subject Ultimate to a real and reasonable apprehension that the continuing sales of the Accused Products will result in litigation by JHD against Ultimate, QVC, and Kathy Levine claiming infringement and related liability, which would severely disrupt Ultimate's business operations and income and negatively affect Ultimate's reputation with its business partners.

Ultimate has initiated this action for purposes of seeking declaratory relief and resolution concerning JHD's allegations of copyright infringement.

## COUNT I
### Declaratory Judgment of No Copyright Infringement

66. Ultimate incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint.

67. There is an actual, substantial, and continuing justiciable controversy between Ultimate and JHD regarding the non-infringement of the Asserted Designs and Ultimate's ability to sell the Accused Products.

68. Ultimate has not infringed, and is not infringing, any copyright that JHD may have in any of the Asserted Designs.

69. Ultimate is entitled to a declaration that it has not, and is not, infringing any copyright that JHD may have in the Asserted Designs. Ultimate has no adequate remedy at law.

## COUNT II
### Declaratory Judgment of Copyright Invalidity and/or Unenforceability

70. Ultimate incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint.

71. There is an actual, substantial, and continuing justiciable controversy between Ultimate and JHD regarding the validity of JHD's alleged rights in the Asserted Designs.

72. Because each of the Asserted Designs are not original, no valid copyright claim can exist for any of them.

73. Because any copyright(s) in any of the Asserted Designs was assigned to a third party, JHD has no valid copyright in any of the Asserted Designs.

74. Ultimate is entitled to a declaration that JHD does not own any valid copyright in any of the Asserted Designs. Ultimate has no adequate remedy at law.

## REQUEST FOR RELIEF

WHEREFORE, Ultimate respectfully requests that this Court enter judgment in Ultimate's favor as follows:

(a) Judgment declaring that Ultimate has not infringed any valid copyright owned by JHD with respect to the Asserted Designs;

(b) Judgment declaring that JHD does not own any valid copyright in any of the Asserted Designs;

(c) Judgment awarding attorneys' fees, costs, and expenses to Ultimate in connection with this case; and

(d) Judgment awarding Ultimate such other and further relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: February 24, 2026

*s/ Noam J. Kritzer*
**KRITZER MCPHEE LLP**
Noam J. Kritzer (036602000)
(nkritzer@kmpatentlaw.com)
256 Columbia Turnpike
Edison Suite, Unit 204
Florham Park, New Jersey 07932
Tel: (973) 679-7272

Ryan S. McPhee (037562009)
(rmcphee@kmpatentlaw.com)
501 W. Broadway, Suite 800
San Diego, California 92101
Tel: (619) 758-3600

*Attorneys for the Plaintiff:*
*Ultimate Trading International, LLC*

## **CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2**

I certify that to the best of my knowledge, the matter in controversy is not subject to any other action pending in any court, or of any pending arbitration or administrative proceeding.

Dated: February 24, 2026

*s/ Noam J. Kritzer*
**KRITZER MCPHEE LLP**
Noam J. Kritzer (036602000)
(nkritzer@kmpatentlaw.com)
256 Columbia Turnpike
Edison Suite, Unit 204
Florham Park, New Jersey 07932
Tel: (973) 679-7272